NO. 07-10-00220-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



JUNE
9, 2011

 



 

JONATHAN A. JACOBSON, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 140TH DISTRICT COURT OF
LUBBOCK COUNTY;

 

NO. 2007-418,173; HONORABLE JIM BOB DARNELL, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

OPINION

            Appellant,
Jonathan A. Jacobson, appeals his conviction, by jury, for aggravated sexual
assault of a child[1]
and the resulting punishment of forty-five years’ imprisonment.  On appeal, he contends the trial court erred
by overruling his objection to the State’s jury argument striking at him over
the shoulders of counsel.  We will
affirm.

 

 

Factual and Procedural History

            Appellant
does not challenge the sufficiency of the evidence to support the
conviction.  In fact, he concedes that
the evidence was sufficient.  In light of
his sole issue on appeal, we address only those facts necessary to the
disposition of the appeal.

            Appellant
was a family friend of complainant, B.J.P. 
The relationship between twelve-year-old B.J.P. and twenty-year-old
appellant began as one resembling siblings but transformed into a possessive,
sexual relationship.  After a number of
outbursts by appellant in response to any effort to keep B.J.P. away from him
and after discovering love letters between appellant and B.J.P., B.J.P.’s
mother reported her suspicions to the Lubbock County Sheriff’s Department.  The department began its investigation.

            Initially,
B.J.P. was reluctant to discuss her relationship with appellant.  Early in her interview with Detective Richard
Mayer, she denied the existence of a sexual relationship.  Based on his investigation up to that point,
however, Detective Mayer sensed that B.J.P. was not being truthful with him
and, so, he persisted in asking her questions while reassuring her that, if she
and appellant had had a sexual relationship, she would not be in trouble.  B.J.P. admitted that she and appellant did
have a sexual relationship.

            During
cross-examination, Mayer testified that, at the beginning of his investigation,
he did not know whether appellant was guilty or innocent.  Mayer explained that, even after B.J.P.
admitted that she and appellant had engaged in sexual intercourse, he continued
his investigation into the matter:

I still knew that even with her saying yes [that sexual intercourse did
occur] that I would need more to prove the case, which would be the CARE
exam.  So I wasn’t like, ‘Oh, I got this
one in my win pile,’ you know . . . I still have to go through the steps of
investigation to be sure that I’m not just falsely accusing somebody of
something.

            During closing argument to the jury, defense counsel
seized on the “win pile” phrase and focused on Detective Mayer’s investigatory
approach as he attempted to paraphrase Mayer’s testimony:

Some of the things that Detective Mayer told you that came out, that
just jumped up.  ‘We have to ask
ourselves, now, what is it going to take as far as details, as far as
testimony, to put this case in the win pile?’ 
You remember that’s what the detective said, “in the win pile.”  And he thought about that.  From the interview with
Mike Privette right off the bat, the first interview.

. . .

The State then asked the detective if he was uncomfortable, and he felt
essentially as though he had been attacked, because he sat in that chair and
faced hard questions . . . . We start with him talking about how he put it in
the win pile.  Not about an
investigation.  Not about following where
the evidence leads.  You heard him say,
‘We know what happened.  We know who did
it.’

Defense counsel’s jury
argument continued in a rather scathing tone, characterizing the investigation
as a “witch hunt.”

            The
State responded in its argument to the jury: “Somebody in this courtroom has an
end result that they will twist and turn and fill in the holes to make it
work–”  Appellant objected to the State’s
argument as striking at appellant over shoulders of counsel, and the trial
court overruled appellant’s objection. 
In that same vein, the State continued: 
“The Defense in this case had their end result, and they will twist the
words of Detective Mayer.  And if you
don’t believe me, how many times did he stand up here and use the word ‘win
pile’?”

            After
the jury found appellant guilty of aggravated sexual assault of a child as
alleged and during the trial on punishment, appellant testified and admitted to
having had an ongoing sexual relationship with B.J.P.  After considering appellant’s testimony and
the other punishment evidence, the jury assessed a forty-five year sentence.

            Appellant
timely appealed and now contends that the State struck at defendant over the
shoulders of counsel.  He maintains that
the trial court erred by overruling his objection to the State’s argument and
that, in light of the nature of State’s argument and the absence of any
curative instruction to the jury, such error was harmful.

Analysis

            Before
we can reach the merits of appellant’s point of error, we must first examine
the impact of appellant’s confession to the offense during the trial on
punishment.  The Texas Court of Criminal
Appeals outlined the effect that a defendant’s confession would have on
subsequent points of error in DeGarmo v.
State, 691 S.W.2d. 657, 660–61 (Tex.Crim.App.
1985).  The general principle of DeGarmo,
was that a defendant may not complain on appeal of an error occurring at the
guilt phase of the trial when the defendant admits his guilt at the punishment
phase of trial.  Id.
at 661; Houston v. State, 208 S.W.3d 585, 589–90 (Tex.App.—Austin
2006, no pet.).  Ten years after DeGarmo, the Texas Court of Criminal Appeals
reaffirmed the DeGarmo doctrine and explained
the basis for such a rule:

When the defendant testifies and judicially confesses to the charged
offense, the purpose of the trial process has been served–the truth has been
determined and the purpose of the guilt/innocence phase of the trial has been
satisfied.  No reversible error should
occur where the defendant has satisfied the necessity of the trial process.

McGlothlin v. State, 896 S.W.2d 183, 187 (Tex.Crim.App. 1995).

            The
Texas Court of Criminal Appeals refined and narrowed the scope of the DeGarmo doctrine in Leday
v. State, 983 S.W.2d 713, 715 (Tex.Crim.App.
1998) (en banc).  The Leday
court acknowledged that “we as a people have deliberately chosen to adopt laws
which interfere with the truth-seeking function of the criminal trial.”  Id. at 724.  Therefore, the court explained, the need to
protect some fundamental rights outweighs the truth-seeking function of a
criminal trial.  Id.
at 724–25.  After Leday, when issues are raised on appeal by an
appellant who admitted his guilt during the punishment phase of his trial, a
reviewing court must “determine if appellant asserts fundamental rights or
guaranties [which he cannot be estopped from
asserting], or whether the truth-finding function prevails to estop appellant from raising them.”[2]  Gutierrez v. State,
8 S.W.3d 739, 745 (Tex.App.—Austin 1999, no pet.).  In other words, when an alleged error during
the guilt/innocence phase of trial does not implicate a defendant’s fundamental
rights, a defendant who admits guilt at the punishment phase of trial is estopped from raising that error on appeal.  See Wenger v.
State, 292 S.W.3d 191, 202 n.8 (Tex.App.—Fort
Worth 2009, no pet.) (admission of extraneous
offense evidence); Jarmon v. State, 263
S.W.3d 25, 30–31 (Tex.App.—Houston [1st Dist.] 2006,
pet. ref’d) (same); Houston, 208 S.W.3d at
590–91 (same); Kelley v. State, 22 S.W.3d 628, 631 (Tex.App.—Fort
Worth  2000, pet. ref’d)
(alleged jury charge error); Gutierrez, 8 S.W.3d at 745 (jury
note-taking during trial).  

            During
his testimony at the trial on punishment, appellant confessed to having had
sexual intercourse with B.J.P.  Thus, he
will be estopped from raising his point of error on
appeal unless we determine that the error of which he complains implicates a
fundamental right.  So, we first evaluate
the nature of the issue appellant presents to this Court.  That is, we must determine whether the issue
appellant raises is one which implicates fundamental rights or guaranties and,
thus, is one that, under Leday, is of the
nature that would survive for our review beyond appellant’s confession.  

            Our
research yields no case that directly addresses the DeGarmo/Leday doctrine’s application to assertions
that the State struck at defendant over the shoulders of counsel.  We, therefore, look to the treatment of this
type of error in other contexts.  See Jarmon, 263 S.W.3d at
30 (for a thorough discussion of the considerations that go into evaluation
whether the error implicates a fundamental right under Leday).

            It
is well established that an appellant who fails to raise the complaint that the
State struck at him over the shoulders of counsel forfeits his right to advance
his complaint on appeal.  See Threadgill v. State, 146 S.W.3d 654, 667 (Tex.Crim.App. 2004); see also Huff v. State,
No. 07-10-00174-CR, 2010 Tex. App. LEXIS 9424, *10–11 (Tex.App.—Amarillo
Nov. 29, 2010, no pet.) (mem. op., not designated for
publication); Stephenson v. State, 255 S.W.3d 652, 659 (Tex.App.—Fort Worth 2008, pet. ref’d).  From these cases, we can conclude that the
error of which appellant complains is not considered fundamental error which
could be raised for the first time on appeal. 
Further, the Texas Court of Criminal Appeals has consistently and
clearly concluded that error associated with striking over the shoulders of
counsel is subject to harm analysis as nonconstitutional
error.  See Brown
v. State, 270 S.W.3d 564, 572–73, n.2 (Tex.Crim.App.
2008); Martinez v. State, 17 S.W.3d 677, 692 (Tex.Crim.App.
2000); Mosley v. State, 983 S.W.2d 249, 259 (Tex.Crim.App.
1998).

            In
anticipation of the State’s argument, appellant cites the Court to Leday and likens the issue in the instant case to an
improper prosecutorial comment on a defendant’s failure to testify.  Appellant does not advance an argument that
the State’s argument in the instant case constitutes an improper comment on
appellant’s failure to testify in the guilt/innocence phase of trial.  Rather, he suggests that the argument that
strikes at a defendant over counsel’s shoulders is similar to or should receive
similar treatment as a prosecutorial comment on the failure to testify.  We decline to adopt his analogy.  Unlike the issue at bar, a defendant’s
privilege against self-incrimination is a right that is directly and firmly
rooted in constitutional law.  U.S. Const. amend.
V; Griffin v. California, 380 U.S. 609, 614, 85
S.Ct.1229, 14 L.Ed.2d 106 (1965); Cruz v. State, 225 S.W.3d 546, 548 (Tex.Crim.App. 2007). 
Leday recognized this and includes such
a right in its non-exhaustive list of exceptions to the estoppel-by-confession
principle.  983 S.W.2d
at 725.  

            Drawing
upon cases that characterize the type of error which appellant urges here as
forfeitable by inaction and nonconstitutional in
nature, we conclude that such error does not implicate fundamental rights and,
thus, is not in the category of error that would survive for our review under Leday after appellant confessed to having committed
the offense.  Under Leday,
appellant is estopped from complaining of improper
jury argument after he admitted during the punishment trial that he committed
the offense, and our review of this issue on these facts is precluded.  Accordingly, we overrule appellant’s sole
issue on appeal.

Conclusion

            Having
overruled appellant’s sole point of error, we affirm the judgment of the trial
court.[3]

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 

Publish. 


 











[1]
See
Tex. Penal Code Ann. § 22.021(a)(2)(B) (West Supp. 2010).





[2]
The Leday court
also set out a non-exhaustive list of errors that a defendant who confessed
guilt is not estopped from raising on appeal: (1)
errors violating the Due Process Clauses of the Fifth and Fourteenth Amendments
regarding the right to have guilt proved beyond a reasonable doubt; (2) errors
violating the right in the Double Jeopardy Clause of the Fifth Amendment to not
be subjected to a second trial even when there is clear evidence of guilt; (3)
errors violating the right to refuse to testify found in the Self-Incrimination
Clause of the Fifth Amendment; (4) errors violating the right found in the Due
Process Clause of the Fourteenth Amendment to exclude coerced confessions; (5)
errors violating the Fourth Amendment prohibition against unlawful search and
seizure and illegally obtained evidence; (6) errors violating Article 5 of the
Rules of Evidence regarding exclusion of privileged evidence; (7) errors
violating the right to have excluded custodial interrogation statements not
conforming to the requirements of the Code of Criminal Procedure art. 38.22;
(8) errors violating the right to have jurors prevented from asking witnesses
questions.  983 S.W.2d at
725.





[3]  In addition to
joining the majority’s opinion, C.J. Quinn would also overrule the issue
because the utterance, when viewed in context, would not be one that reasonable
jurors would interpret as commenting upon appellant’s right to remain silent.